**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **Jerrell P. Squyres,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-cv-02348-B** |
| | § | |
| **The Heico Companies, LLC,** | § | |
| **S-Line, LLC, and** | § | |
| **Ancra International, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

---

## PLAINTIFF'S RESPONSE BRIEF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

GILLESPIE, ROZEN & WATSKY, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, TX 75204
Telephone:  214.720.2009
Fax:   214.720.2291

/s/ Yona Rozen
Hal K. Gillespie, Attorney in Charge
State Bar No. 07925500
Yona Rozen
State Bar No. 17358500

**ATTORNEYS FOR PLAINTIFF**
**JERRELL P. SQUYRES**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................5

II.     SUMMARY OF ARGUMENT ...............................................................................5

III.    STATEMENT OF THE FACTS ............................................................................7

IV.    ARGUMENT AND AUTHORITIES....................................................................12

      A.     Summary Judgment is improper where, viewing the evidence and taking inference in Squyres' favor material factual disputes remain....................................12

      B.     Squyres' burden is to show, by direct or circumstantial evidence, that Defendants terminated him because of his age....................................................14

           (1)    Squyres easily presents a prima facia case of age discrimination .................17

           (2)    McDonnell Douglas continues in force in age discrimination cases even after Gross: Defendants must respond to Squyres' prima facie case with a sufficiently clear, non-discriminatory reason ............................18

           (3)    Defendants cannot have it both ways---on one hand say there was no termination and then they claim an allegedly non-    discriminatory legitimate business reason to explain the termination (that they swear did not occur)…………………………………………...19

           (4)    Even if Defendants' "maybe" reasons are considered for the purpose of establishing their McDonnell Douglas burden to show legitimate, non-discriminatory reasons for the adverse action, the shifiting nature of the reasons provide evidence of pretext…………………………………….19

           (5)    In addition to evidence of shifting reasons, Squyres has produced other substantial evidence of pretext…………………………………………20

           (6)    Defendants attempt to rely on the "same actor" inference is misplaced…………………………………………………………….22

           (7)    Summary judgment on issue of single integrated enterprise is not appropriate in  the face of substantial factual disputes regarding the factors which would support a finding that the three entities are a single integrated enterprise…………………………………………….24

IV.    CONCLUSION………………………………………………………………...25

TABLE OF AUTHORITIES

<u>CASES</u>

<u>Amburgey v. Cohart Refractories Corp., Inc.,</u>
   936 F.2d 805 (5th Cir. 1991).................................................................................. 15

<u>Anderson v. Liberty Lobby, Inc.,</u>
   477 U.S. 242 (1986) ......................................................................................... 13

<u>Baker v. Am. Airlines, Inc.,</u>
   430 F.3d 750 (5th Cir. 2005).................................................................................. 14

<u>Bauer v. Albermarle Corp.,</u>
   169 F.3d 962 (5th Cir. 1999).................................................................................. 15

<u>Bienkowski v. Am. Airlines, Inc.,</u>
   851 F.2d 1503 (5th Cir. 1988)................................................................................. 4

<u>Brown v. CSC Logic, Inc.,</u>
   82 F.3d 651 (5th Cir. 1996)................................................................................... 22

<u>Buhrmaster v. Overnite Transp. Co.,</u>
   61 F.3d 461 (6th Cir. 1995)................................................................................... 4

<u>Burrell v. Dr. Pepper,</u>
   482 F.3d 408 (5th Cir. 2007)................................................................................. 19

<u>Castaneda v. Partida,</u>
   430 U.S. 482 (1977) ......................................................................................... 23

<u>Celotex Corp. v. Catrett,</u>
   477 U.S. 317 (1986) ......................................................................................... 13

CIVIL ACTION NO. 3:12-cv-02348-B ..................................................................... 0, 5

<u>Danzer v. Norden Systems, Inc.,</u>
   ,151 F.3d 50 (2d Cir. 1998)................................................................................... 23

<u>Decorte v. Jordan,</u>
   497 F.3d 433 (5th Cir. 2007)................................................................................. 22

<u>EEOC v. Our Lady of the Resurrection Med. Ctr.,</u>
   77 F.3d 145 (7th Cir. 1996)................................................................................... 22

<u>Findeisen v. North East Indep. Sch. Dist.,</u>
   749 F. 2d 234(5th Cir. 1984)(internal quotations omitted), ...................................... 13

<u>Foster v. Regis Trade Secret,</u>
   Civ. A. No. 3:07-cv-694-O, 2008 WL 731962 (N.D. Tex. Mar. 19, 2008) .................. .. 13, 14

<u>Gee v. Principi,</u>
   289 F.3d 342 (5th Cir. 2002).................................................................................. 20

<u>Gibson v. Swiss Reinsurance Am. Copr.,,</u>
   Civ. A. No. 99-cv-2929-G, slip op. at 9 (N.D. Tex. May 7, 2001) ........................... 14

<u>Gross v. FBL Fin. Servs., Inc.,</u>
   ___ U.S. ___, 129 S.Ct. 2343 (2009) ..................................................................... 16

Hall v. Smurfit-Stone Container Enter., Inc.,
    Civ. A. No. 3:07-cv-0501-G, 2008 WL 3823252 (N.D. Tex. Aug. 14, 2008).......................... 13

Haun v. Ideal Indus., Inc.,
    81 F.3d 541 (5th Cir. 1996)................................................................................................ 22

Jackson v. Cal-Western Packaging Corp.,
    602 F.3d 374 (5th Cir. 2010)................................................................................................ 2

Jackson v. Cal-Western Packaging Corp.,
    ___ F.3d ___.......................................................................................................................... 4

Johnson v. Zema Systems Corp.,
    170 F.3d 734 (7th Cir. 1999)................................................................................................ 23

Kadas v. MCI Systemhouse Corp.,
    255 F.3d 359 (7th Cir. 2001)................................................................................................ 23

Laxton v. Gap Inc.,
    333 F.3d 572 (5th Cir. 2003)................................................................................................ 20

Lusk v. Foxmeyer Health Corp.,
    129 F.3d 773 (5th Cir. 1997)................................................................................................ 24

Machinchick v. PB Power, Inc.,
    398 F.3d 345 (5th Cir. 2005)........................................................................................ 2, 4, 14

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)............................................................................................................ 14

Mock v. Bell Helicopter Textron, Inc.,
    196 Fed. Appx. 773 (11th Cir. 2006)..................................................................................... 21

Moultrie v. Laboratory Corp. of America,
    2004 WL 1173398 (W.D. Tex. May 27, 2004)........................................................................ 23

O'Connor v. Consolidated Coin Caterers Corp.,
    517 U.S. 308 (1996)............................................................................................................. 2

Patrick v. Ridge,
    394 F.3d 311 (5th Cir. 2004)................................................................................................ 15

Quantum Chem. Corp. v. Toennies,
    47 S.W.3d 473 (Tex. 2001)............................................................................................. 4, 16

Rachid v. Jack in the Box,
    376 F.3d 305 (5th Cir. 2004)................................................................................................ 14

Rand v. CF Indus., Inc.,
    42 F.3d 1139 (7th Cir. 1994)................................................................................................ 22

Russell v. McKinney Hosp. Venture,
    235 F.3d 219 (5th Cir. 2000)......................................................................................... 20, 22

St.Mary's Honor Center v. Hicks,
    509 U.S. 502 (1993)....................................................................................................... 15, 18

Staten v. New Palace Casino,
    187 Fed. Appx. 350 (5th Cir. 2006)...................................................................................... 22

3

<u>Tex. Dep't Comm. Affairs v. Burdine,</u>
    450 U.S. 248 (1981) ........................................................................................ 15
<u>Trevino v. Celanese Corp.,</u>
    701 F.2d 397 (5th Cir. 1983).......................................................................... 24
<u>Uranyi v. Multiplan, Inc.,</u>
    2006 WL 1662616 (E.D.N.Y. June 12, 2006)................................................ 24
<u>Waltman v. Int'l Paper Co.,</u>
    875 F.2d 468 (5th Cir. 1989)....................................................................... 2, 4
<u>Waters,</u>
    438 U.S. 567 (1978) ........................................................................................ 15
<u>Wexler v. White's Fine Furniture, Inc.,</u>
    317 F.3d 564 (6th Cir. 2003).......................................................................... 22

<u>STATUTES</u>

29 U.S.C. § 623(a)(1)............................................................................................ 2, 4
Tex. Lab. Code § 21.051......................................................................................... 14
Tex. Lab. Code § 21.125(a) .................................................................................... 16
Tex. Lab. Code § 21.125(b) ...................................................................................... 2

<u>RULES</u>

Fed. R. Civ. P. 56(c) .............................................................................................. 13
Federal Rule of Civil Procedure 56 ....................................................................... 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| Jerrell P. Squyres, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-cv-02348-B |
| | § | |
| The Heico Companies, LLC, | § | |
| S-Line, LLC, and | § | |
| Ancra International, LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINITIFF'S RESPONSE BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Multiple genuine issues of material fact remain as to whether Defendants terminated Plaintiff Jerrell P. Squyres because of his age.[1]  Given the depth and breadth of the factual disputes, the Court should deny summary judgment and allow this case to proceed to trial before a jury.

**II.      SUMMARY OF ARGUMENT**

Squyres can establish a prima facie case of age discrimination under the ADEA and the TCHRA because (1) he is in the protected age group (and was substantially older than all the other individuals in the sales force), (2) he was well qualified for his position, (3) he was subjected to an adverse action, in that Defendants terminated his employment on October 22,

---

[1] Defendants' in their motion and brief seek summary judgment as to Squyres' breach of contract claims as well. Prior to filing this response, Squyres' filed a motion for leave to file his third amended complaint wherein he advised of his intent to drop his breach of contract claim and instead sought to amend the complaint to include a fraudulent inducement claim. On this date the Court denied the motion to amend but Plaintiff does not intend to proceed with the breach of contract claim.  Therefore this response in opposition to the motion for summary judgment, does not address the breach of contract claim.

2011 and (4) he was replaced by substantially younger individuals or was otherwise discriminated against based upon his age.

Defendants state both in interrogatory answers and in deposition testimony that Squyres was not terminated. These statements preclude Defendants from asserting a legitimate, non-discriminatory reason for the termination (which they say (incredibly) did not occur). Defendants try to have it both ways and in their motion and brief asserted shifting and inconsistent reasons for the adverse action that they deny under oath happened. At the time Squyres was notified of his termination, Defendants provided him no reason for his termination, Defendants merely informed Squyres that if he did not agree to the proposed independent contractor arrangement, his last day would be October 22, 2011.

After the lawsuit was filed, in response to an interrogatory from Squyres, asking for the reason for termination, Defendants stated Squyres was not terminated, his written employment agreement was just not renewed and expired by its terms.  However, in their motion for summary judgment, inconsistently, Defendants assert "four related"[2] reasons.  Then, when Steve Frediani, CEO and President of Ancra was deposed a mere 18 days after signing his affidavit, he failed to offer any of these "four related reasons" and instead stated that Squyres was not terminated, rather his employment agreement ended because of the expiration of his contract.  Frediani denied that there were any performance related reasons that would have caused Squyres to be terminated.  These inconsistent reasons preclude Defendants from asserting a legitimate, non-discriminatory reason in the first instance.  Even assuming these shifting reasons can be viewed as sufficient to establish Defendants' burden to come forward with a legitimate non-

---

[2] Defendants/ Brief in Support of Their Motion for Summary Judgment at P. 20.; Frediani affidavit, para. 15.

discriminatory reason, Squyres can provide substantial evidence of pretext and mendacity so that summary judgment is inappropriate.

In addition, in contrast with the assertions in Defendants motion for summary judgment and brief in support, substantial evidence supports a finding that Defendants are a single intergrated enterprise and therefore constitute an employer under the ADEA and TCHRA.  In connection with the issues regarding the interrelationships there are substantial material factual disputes as to the interrelationships between Heico, Ancra and S-Line which preclude the granting of summary judgment as to Heico and Ancra.  The single integrated enterprise issue is a fact question for the jury.

### III.    STATEMENT OF THE FACTS

Squyres had extensive (more than 40 years) experience in the trucking industry and extensive high level contacts with many of the major carriers such as UPS, Con-Way, Great-wide, Estes and Best Overnite. (P App.199).  Squyres was employed from October 22, 2008 through October 22, 2011 with the job title of Vice President of Sales and Marketing for S-Line in an employment agreement signed by an employee of Heico (in its acquisitions department).  During his three years of employment with Defendants, Defendants asked Squyres to accompany and train younger sales personnel on sales calls and to utilize his many high level contacts in the industry to gain entry that would otherwise not have been available to Ancra sales personnel.  He was successful in generating substantial sales and establishing new customers.  Though it is a disputed fact, Squyres evidence is that his contacts with Con-Way led to the single largest sale by Ancra in its history (Fong dep.__).

With a birth date in 1941, Squyres was substantially older than all of his counterparts among the sales force he interacted with and was substantially older than most of management

he reported to.  (Interrogatory answers and P. App. 170 at No. 4, 172, 182, at No. 4. 184; 194-95 at No. 4; 196-197.

During the three years of employment, Squyres was treated differently (and in an inferior manner) from his younger counterparts.  He was excluded from sales meetings and company functions.  He was omitted from telephone lists of sales personnel and was ignored and given the cold shoulder by upper management when he did attend sales meetings.  His emails and efforts to interact and get information and support from his superiors were repeatedly ignored by upper management and Squyres was unable to get information necessary to proceed effectively with sales efforts.  His counterparts referred to him as "the old guy" or old man.  He was exiled from the S-Line office and told to work from home.  He was not involved or consulted when S-Line was seeking new offices in Dallas.  He was subjected to stricter scrutiny on review of business expenses as compared to his counterparts.  He was treated as a second class employee.  As his three years written agreement was coming up for renewal, he had the sense that he was only being used to gain access to his contacts and that Defendants were simply trying to soak up his experience before casting him aside.  (P. App. (Squyres Dep) 30-52.

As the period covered by his written contract was winding down and Squyres had indications that his days were numbered, in August 2011 Squyres told Mark Daughtery (HR for Ancra and S-Line) that he wanted to continue to work until he was 90, health permitting, and he was willing to work without a written contract.   P. App. 24-26, 202. See also, Defendants' Amended Answer and Affirmative Defenses to Plaintiff's Second Complaint and Jury Demand (Docket No.48, p.8 at paragraph 28).

Defendants never asked Squyres if he would stay, nor offered Squyres the opportunity to continue as an at-will employee. Within less than a month of telling Daughtery that he wanted to

work to age 90, and immediately after he turned 70 years old, Defendants' gave Squyres a take it or leave it offer to quit as an employee and convert to an independent consultant–with no possibility of continuing as an employee with benefits and the protection of state and federal employment laws.  Defendants never asked  Squyres if he would have been willing to work for a lesser salary.  No other employees at Ancra or S-Line had written employment contracts.  (P. App. 163).  So no other employees were subjected to this unique "either you have a written contract or your employment ends" policy.  Ancra President and C.E.O. Frediani admits that no one besides Squyres had an employment agreement and that employees are not required to have an employment agreement. (P.App. 83-84).

Defendants gave no reason to Squyres for termination of his employment and never discussed the possibility of his continuing as an at-will employee.  Rather the only option discussed with him was a possible independent consultant agreement if Squyres would quit or acquiesce in his termination. Frediani cut off discussions of an independent consultant agreement while Squyres was in the middle of discussions to attempt to clarify the contours of an agreement and turned Squyres from an employee with pay and benefits into a former employee, while refusing to admit that Defendants terminated Squyres and conceding that Squyres did not resign. (P.App. 82).  This failure to assert any reason for the termination (and claim that termination did not even happen) continued in Defendents' responses to interrogatories and in deposition testimony from Defendants witnesses.   No reason for termination was given because in each instance they took the position that Squyres was not terminated, but that rather his employment agreement expired (while conceding that having an employment agreement is not a job requirement with Defendants).  Taking this position, that there was no termination, precludes Defendants from taking the necessary **first step** of defense in an age discrimination case.

9

Defendants have chosen a "defense" that is no defense at all; Defendants never reach the point of asserting a legitimate, non-discriminatory reason for termination. Summary judgment is unavailable to Defendants in this case because, based on the undisputed testimony, despite Defendants' denial, they did terminate Squyres as an employee and thereafter, claiming there was no termination, Defendants failed to take the first step of mounting a defense – the step of articulating a legitimate non-discriminatory reason for termination.

In their brief in support of the Motion for Summary Judgment, Defendants attempt to establish legitimate, non-discriminatory business reasons for the termination by asserting four so-call reasons (but not reasons for termination, since they testify termination never occurred.[3] Defendants never provided these (non) reasons to Squyres at the time of his termination. They gave him no reason for the termination. In addition Squyres has evidence that strongly contests these (non)reasons. Defendants state their after-the-fact (non) reasons[4] as (1) Squyres lack of success as a salesperson and the need to reduce costs accordingly; (2) Squyres' conduct with regard to business expenses; (3) Squyres' resistance to reporting to someone other than himself; and (4) the fact that Squyres spent too much time as social events that he viewed as business events, but that Frediani did not.  (Docket No. 52 at p. 27 of 33, paragraph 40).  The only "evidence" offered to support these asserted reasons is paragraph 15 of Frediani's affidavit (Def. App at 62, paragraph 15).  Frediani signed this affidavit on July 29, 2013 and contradicted it with his testimony during his deposition which occurred eighteen days later on August 16, 2013.  On August 16, 2013 Frediani testified that Squryes was not terminated but in any case there were no

---

[3] Testimony of Daugherty (P. App. 152) and Frediani (P. App.87).
[4] Again – it is crucial to remember that in his deposition, Frediani claimed (a) Squyres was not terminated and (b) if his employment agreement had not expired, there was no other reason for terminating him, since Squyres was of value to the company and he had wanted to continue working with Squyres, just not with Squyres as an employee.

performance issues that would have justified a termination and is his view Squyres could benefit the company.  (P. App.).  Moreover, Squyres denies these assertions.  (P. App. ).

More specifically, all of the "social" events which Frediani complains about took place on weekend days.  Squyres' attendance at these social events was directly responsible for additional sales opportunities and actual sales and new customers for Ancra.

Squyres was employed from October 22, 2008 through October 22, 2011 as the Vice President of Sales and Marketing for S-Line.  By the terms of the EA he was to report to the "Manager" of S-Line which at the time of the asset sale was designated in the agreement as "Heico Companies", the EA was signed by an officer of Heico and notice was to be given to Heico Holdings, Inc to the attention of the Chairman of Heico.

At various times during his employment, Squyres was directed to report to and take direction from Tom Leone, VP and General Manager of Ancra, Paul Delaney of Ancra and ultimately Steve Frediani, President and CEO of Ancra.

During his employment Squyres received responses to questions about business expenses, vacation policies, education reimbursement policies and other labor relations or employment issues from managers with Heico and/or Ancra and was referred to policies and handbooks which were Heico and/or Ancra policies.

During his employment, Squyres received directions and instructions from Steve Frediani and was told to obtain information regarding compensation and benefit issues from Nelson Fong, CFO of Ancra.  Frediani also instructed him to interact with and consult Ralph Abato, Paul Wolford and Paul Delaney, all of whom had sales management responsibilities with Ancra.

He was required to make sales calls with various sales personnel who had sales responsibilities with Ancra and he worked on a device which is currently being patented by

Ancra.  At times his travel arrangements for a number of these sales calls were made by Ancra personnel.

On several occasions, he was contacted and involved in budget development discussions with Nelson Fong, CFO for Ancra, Tom Leone, Paul Delaney and Steve Frediani, all of whom held management positions with Ancra.

Towards the end of his employment, he was directed by Frediani to interact with Mark Daugherty, VP for Human Resources for Ancra regarding policies, benefits and  questions about continued employment status.

His 401(k) benefits were reported to Heico and were identified as part of the Ancra International LLC 401(k).

Throughout his employment he was given directions and instructions in connection with his job duties and responsibilities from individuals who held positions of authority with and had management and/or supervisory responsibilities with Ancra and/ or Heico.

After Squyres' employment ended, through counsel, he was contacted by an Ancra patent attorney seeking his signature on an assignment of interest and related legal documents regarding a patent he developed while employed by defendants and this letter referenced his employment with Ancra.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Summary judgment is improper where, viewing the evidence and taking inferences in Squyres' favor, material factual disputes remain

Federal Rule of Civil Procedure 56 should be construed "with due regard […] for the rights of persons asserting claims adequately based in fact to have those claims and defenses tried to a jury ...."[5]  The Fifth Circuit has cautioned that summary judgment is a "potent weapon"

---

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

and that "courts must be mindful of its aims and targets and beware of overkill in its use."[6] Courts should consequently be particularly circumspect where a case is scheduled for jury trial.[7]

Summary judgment is appropriate only where the record contains no genuine issue as to any material fact, meaning that the movant is entitled to judgment as a matter of law.[8]  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[9]

Defendants, as the moving party, bear the initial burden of showing entitlement to judgment as a matter of law.[10]  Defendants cannot meet this burden with the conclusory assertion that probative evidence does not exist.  Rather, they must show—through competent evidence— the absence of genuine material fact issues and that they are entitled to judgment as a matter of law.[11]  If they meet that burden, Squyres must then point to record evidence demonstrating the existence of material factual disputes.[12]  As long as "reasonable minds could differ as to the import of the evidence," such that factual disputes remain, the motion for summary judgment must be denied.[13]

In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court unanimously confirmed the standard that courts must follow in assessing motions for summary judgment.[14] *Reeves* and earlier precedent instruct that the Court must accept Squyres' evidence as true and

---

[6] *Findeisen v. North East Indep. Sch. Dist.*, 749 F. 2d 234, 239 (5th Cir. 1984)(internal quotations omitted), *cert denied*, 471 U.S. 1125 (1985).

[7] *Id.*  This case is set for jury trial beginning November 18, 2013 (Docket Nos.40, 41)

[8] FED. R. CIV. P. 56(c); *Foster v. Regis Trade Secret*, Civ. A. No. 3:07-cv-694-O, 2008 WL 731962 (N.D. Tex. Mar. 19, 2008).

[9] *Foster*, 2008 WL 731962 at *2(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[10] *Id.*

[11] *Hall v. Smurfit-Stone Container Enter., Inc.*, Civ. A. No. 3:07-cv-0501-G, 2008 WL 3823252, *2 (N.D. Tex. Aug. 14, 2008).

[12] *Foster*, 2008 WL 731962 at *2.

[13] *Id.* (quoting *Anderson*, 477 U.S. at 250).

[14] 530 U.S. 133 (2000).

draw all reasonable inferences in his favor.[15]   Meanwhile, the Court must avoid making credibility determinations in light of conflicting evidence or competing inferences.[16]   For "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are functions of a jury at trial, not those of a judge in ruling as a matter of law.[17]

### B.   Squyres' burden is to show, by direct or circumstantial evidence, that Defendants terminated him because of his age

Both the ADEA and the TCHRA make it unlawful for an employer to terminate an individual "because of" the employee's age.[18]   To overcome Defendants' motion, Squyres must present direct or circumstantial evidence sufficient to create a dispute of material fact as to Defendants' discriminatory motive.[19]

One method of showing discrimination available to Squyres is the *McDonnell Douglas* burden-shifting framework.[20]   Under this framework, Squyres must first establish a prima facie case of discrimination.[21]   Squyres's burden at this point is not onerous and only a "low showing" is required to shift the burden to Defendants.[22]   After all, *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic"; rather, it is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of

---

[15] *Id*. at 150-151; *Liberty Lobby,* 477 U.S. at 255.

[16] *Foster*, 2008 WL 731962 at *3 (citing *Anderson*, 477 U.S. at 255).

[17] *Reeves*, 530 U.S. at 150-151; *see also Foster*, 2008 WL 731962 at *3 (noting that courts are not permitted credibility determinations when conflicting evidence is presented).

[18] 29 U.S.C. § 623(a)(1); Tex. Lab. Code § 21.051.

[19] *Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004); *Foster*, 2008 WL 731962 at *3.

[20] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

[21] *Id.*

[22] *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005); *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *see also Gibson v. Swiss Reinsurance Am. Copr.*, Civ. A. No. 99-cv-2929-G, slip op. at 9 (N.D. Tex. May 7, 2001)(Doc. No. 67)(noting that it "is relatively easy… for a plaintiff to establish a *prima facie* case," quoting *Amburgey v. Cohart Refractories Corp., Inc.*, 936 F.2d 805, 811 (5th Cir. 1991)).

discrimination."[23]  Squyres's prima facie showing does not require proof of particular elements. Instead, his burden is simply to highlight existing fact issues concerning the contested elements of the prima facie case.[24]  Once he makes this "low showing," an inference of discrimination arises that Defendants must rebut to avoid liability.[25]

Next, and critically here, Defendants **must** offer a sufficiently clear legitimate, non-discriminatory reason for its actions.[26]  If as in this case, the employer fails to come forward with a non-discriminatory legitimate business reason, then Plaintiff should be granted judgment on the issue of liability based upon the presumption of discrimination.  *St.Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

The Supreme Court in *St. Mary's Honor Center* decided that an employer does not lose, as a matter of law, simply because the legitimate non-discriminatory reasons the employer articulates are discredited (reversing the holding of the Court of Appeals).  *Id.* at 508-09.  The Supreme Court ruled that where the employer (petitioners) remains silent (articulates no non-discriminatory reason for the adverse action), the employer's defense fails, but where the employer meets its burden of production and comes forward "whether ultimately persuasive or not" with nondiscriminatory reasons, "the petitioner sustained their burden of production, and thus placed themselves in a better position than if they had remained silent.'"  *Id.*  So, under St. Mary's Honor Center, the converse is true, the employer who choses to remain silent as to non-discriminatory reasons for termination – the choice Defendants Heico et al made here, by saying there **was no termination and there were no reasons,**  must lose, as a matter of law.

---

[23] *Furnco. Const. Co. v. Waters*, 438 U.S. 567, 577 (1978); *see also Tex. Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)(noting that burden of establishing *prima facie* case of disparate treatment is not onerous).
[24] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989).
[25] *Bauer,* 169 F. 3d. at 966.

[26] *See Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

On the other hand, if Defendants satisfy this burden based on credible evidence, the analysis diverges and Squyres' claims must be analyzed under both state and federal standards of causation.  Under the ADEA, once Defendants supply a non-discriminatory reason, the burden shifts back to Squyres to establish that his age was the but-for cause of the termination.[27]  As was the case prior to *Gross v. FBL Financial Services, Inc*., Squyres may prove discrimination with a showing that Defendants' reason is either false or unworthy of belief—that it was a pretext for discrimination.[28]  This pretext showing, combined with Squyres' prima facie case, allows a jury to infer that age discrimination occurred.[29]

Squyres' TCHRA claim presents a separate set of considerations once Defendants produce their supposed non-discriminatory reason (which they simply have not done here, based on the sworn testimony of Frediani, Leone, Fong and Daugherty)  Squyres need not demonstrate that Defendants' reason was the "but-for cause" of his termination.  Instead, Squyres can advance his case to trial by showing that his age was a motivating factor in his firing.[30]  If he does so, meaning that if he shows that age was among its reasons, the burden shifts to Defendants to prove that they would have terminated Squyres regardless of the age bias.[31]

### (1)     *Squyres easily presents a prima facie case of age discrimination.*

---

[27] *Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___, 129 S.Ct. 2343, 2353 (2009); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 and n. 14-15 (5th Cir. 2010)(noting that Supreme Court left the question open in *Gross* but concluding that it was "bound by […] circuit precedent applying *McDonnell Douglas* to age discrimination cases.").

[28] *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506-07 (5th Cir. 1988)(summarizing the age-plaintiff's burden).

[29] *Reeves*, 530 U.S. at 148; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005).

[30] TEX. LAB. CODE § 21.125(a)("… an unlawful employment practice is established when the complainant demonstrates that … age … was a motivating factor for an employment practice, even if other factors also motivated the practice …."); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)(holding that "a motivating factor" is the standard of causation in all TCHRA discrimination claims); *see also* TEX. PATTERN JURY CHARGES – BUSINESS, CONSUMER, EMPLOYMENT [2008 ed.], PJC § 107.6 ("A 'motivating factor' in an employment decision is a reason for making the decision at the time it was made.  There may be more than one motivating factor for an employment decision.").

[31] TEX. LAB. CODE § 21.125(b); *see also Toennies*, 47 S.W.3d at 475-76 (describing subsection (b) as a defense that may limit the discrimination plaintiff's remedies).

Squyres can easily make a prima facie case, although Defendants argue in their motion he cannot. (Docket No. 52, Defendants' Brief in Support at p.20) There can be no question that at 70 years of age, Squyres was in the protected class and additionally he was substantially older than his counterparts in sales functions. Defendants are silent as to Squyres qualifications for the position but clearly given Squyres' extensive experience and the fact that he successfully held the position for three years, he was qualified. This is bolstered by Frediani's testimony at his deposition. (P. App.     ). Instead, Defendants focus first on their contention that Squyres was not discharged, but rather his Employment Agreement was not renewed and expired on its own terms. This does not go to Squyres's qualifications; both Daugherty and Frediani admitted that having an employment contact is not a job qualification.

Secondly Defendants assert Squyres cannot show that anyone replaced him, and certainly not someone outside the protected class. (Docket No. 52, at p. 20) Each of these assertions is strenuously disputed by Squyres. Squyres was fired, terminated, and gone as of October 22, 2011, no matter what word games and  linguistic calisthenics are used to describe his status. Despite the word games, ultimately even Defendants' witnesses acknowledged that Squyres did not resign and he was no longer on the payroll after October 22, 2011. (P. App._____). Squyres suffered an adverse action and was terminated. And he was in fact replaced. On the eve of his termination, before the termination was effective, a press release was issued by Ancra confirming Jim Calico's new position and title as Vice President of Sales and Marketing for S-Line. (P.App.____). This was the exact same title which Squyres held. In addition, Defendants acknowledged in their answer to interrogatories that Squyres accounts were subsequently assigned to a substantially younger individual, Jeff Murillo. (P. App.     ). There can be no question that Squyres was replaced by a substantially younger individual. Defendants try to

17

impose a requirement that the replacement be outside the protected class but there is clear Supreme Court law that contradicts their position.[32]

    (2)    ***McDonnell Douglas* continues in force in age discrimination cases even after *Gross*: Defendants must respond to Squyres' prima facie case with a sufficiently clear, non-discriminatory reason**

Since Squyres can clearly establish his relatively low burden of establishing a prima facie case, Defendants **must** come forth with a sufficiently clear, non-discriminatory reason to explain Squyres' termination.  Defendants utterly fail to do so in two respects.  First they deny that Squyres was terminated.  Logic dictates that if Defendants contention is the adverse action did not occur, Defendants cannot come forward with a clear, non-discriminatory explanation of the reason for the action.  As noted above in the discussion regarding the *St. Mary's Honor Center* case, failure to come forward with a proffered legitimate, non-discriminatory reason means that Squyres wins and the Court should find in his favor based upon the presumption that flows from his prima facie case which Defendants have failed to rebut.

In addition to denying that Squyres was terminated, Defendants further obfuscate the case by suggesting that the challenged adverse action is Frediani's failure to renew the Employment Agreement.  Squyres does not challenge the failure to renew his written contract.  Rather he challenges the termination of his employment.  In contrast with the implied presumption in Defendants' position, that Defendants decided not to renew the Employment Agreement, *ergo* Squyres' employment simply vanished in a puff of smoke, the decision not to renew the written employment agreement, in no way precluded continued employment as an at-will employee, which is precisely the status of all the other S-Line and Ancra employees.  (P. App.    )

---

[32] *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308 (1996).

**(3)** ***Defendants cannot have it both ways---on one hand say there was no
termination and then they claim an allegedly non- discriminatory
legitimate business reason to explain the termination
(that they swear did not occur)***

Defendants want to have their cake and eat it too.  They repeatedly have said

Squyres was not terminated both in their answers to interrogatories and in deposition testimony.

However in their motion and brief, they have asserted four related allegedly non-discriminatory

reasons for the termination relating to Squyres' performance.   These amount to would-be,

maybe, or hypothetical reasons, but they **are not** the reasons, as Leone, Fong, Daugherty and

Frediani all testified on their depositions (P. App.).    Incredibly, Defendants did not even get

their stories straight.  Thus in Frediani's affidavit, he states both that he never intended to renew

Squyres' employment agreement (paragraph 14) and that he was unhappy with Squyres'

performance for 4 reasons (paragraph 15).  Then in their brief, Defendants cite paragraph 15 as

the sole factual support for their alleged 4 related non-discriminatory reasons for Frediani's

decision not to renew the employment contract.  The only other pieces of evidence they cite to

are several email sent approximately a year and a half before Squyres was terminated.  (Docket

No. 52 at paragraph 42).

**(4)** ***Even if Defendants' "maybe" reasons are considered for the purpose of
establishing their McDonnell Douglas burden to show legitimate, non-
discriminatory reasons for the adverse action, the shifting nature of the
reasons provide evidence of pretext***

Where an employer offers shifting or changing reasons to explain an adverse action, the

fact that the justification is a moving target and shifting, is evidence of pretext.  *Burrell v. Dr.*

*Pepper,* 482 F.3d 408 (5th Cir. 2007); *Gee v. Principi,* 289 F.3d 342, 347-48 (5th Cir. 2002).

Here Defendants have gone back and forth beginning and ending with their incredible (and thus

evidence of pretext) defense that Squyres was not terminated which should preclude them from

having an opportunity to assert a reason at all.  It is the province of the jury to choose among conflicting versions and to make credibility determinations (such as whether Frediani is lying in his affidavit or in his deposition testimony a few days later).  *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 224 (5th Cir. 2000).

> (5)   ***In addition to evidence of shifting reasons, Squyres has produced other substantial evidence of pretext***

Pretext can be proven in a variety of ways.  In addition to the evidence discussed above regarding Defendants incredible assertion that Squyres was not terminated and its shifting explanations, Squyres can establish pretext based upon other evidence.  Courts have found pretext based upon the fact that the employer's justification just did not make sense.  *Laxton v. Gap Inc.,* 333 F.3d 572, 581 (5th Cir. 2003).  Here where the evidence is that essentially all other employees employed by Ancra and S-Line are at will employees who do not possess written employment contracts, Defendants proffered reason that Squyres employment had to terminate because his contract expired, makes no sense.  A reasonable jury can conclude that this "reason" makes no sense the way an employer's "reason" would make no sense if it stated truthfully that the plaintiff, just before being fired, was wearing a blue shirt, but untruthfully that the wearing the blue shirt was the real reason for firing a good employee.

To the extent that the Court concludes that the stated nondiscriminatory reason for termination is - "your employment agreement expired," this is not credible.  Frediani and Daugherty admitted that the company has no rule requiring an employee to have an employment agreement.  The employment agreement itself undercuts this absurd claim - since it (a) discusses and envisions renewal of the agreement and (b) does NOT say that upon expiration of the employment agreement, termination of employment will occur.  In other words, Defendants have

no basis whatever to suggest some kind of contractual right to terminate Squyres that trumps his right to continue employment free of age discrimination.

A second basis for a finding of pretext, and therefore grounds to deny the motion for summary judgment, is the fact that Defendants did not provide Squyres any reason for termination at the time of termination.  (Indeed, a jury can find that Defendants chose to lie to Squyres that he was not being terminated despite the fact that that was exactly what they deliberately did.  Failure to state a reason at termination shows pretext so that a jury trial as to real motive is required.  Mock v. Bell Helicopter Textron, Inc., 196 Fed. Appx. 773, 774 (11th Cir. 2006).

The close temporal nexus between Squyres' statement as he turned 70 that he wanted to work until he was 90, even without a contract and Frediani's decision to terminate him is further evidence of pretext.

Squyres has also produced substantial evidence that the reasons asserted by Frediani in his affidavit at paragraph 15 are false.  In this regard, it is telling that even in the evidence put forth by Defendants, the reference is primarily to internal discussions and emails that were not shared with Squyres ( P.App.        ).  In addition the references are primarily to events that occurred early on in Squyres' employment and not close in time to the decision to terminate his employment in 2011.  Moreover, Frediani's testimony at his deposition completely contradicts and undercuts the statements in his affidavit.  (P. App.        ) Evidence of mendacity and/or fabrication can create a fact issue because it can raise a question as to whether the employer is lying about its reasons.  *Decorte v. Jordan,* 497 F.3d 433 (5th Cir. 2007); *Staten v. New Palace Casino,* 187 Fed. Appx. 350 (5th Cir. 2006).

**(6)**      ***Defendants attempt to rely on the "same actor" inference is misplaced***

Defendants also make a brief reference to the "same actor inference" contending that because Frediani hired Squyres and also was the decision maker in his termination, that there can't be discrimination. Even if it were proper for the Court to draw inferences in the non-movant's favor (which it is not), Defendant incorrectly argues that is entitled to a same actor inference. Far from being mandatory, the Fifth Circuit has held that, "the 'same actor' inference does 'not rule out the possibility that an individual could prove discrimination."[33] Especially at the summary judgment stage, the Court should not draw the same actor inference if an employee has otherwise raised a fact issue, for "while the factfinder is permitted to draw this inference, it is by no means a mandatory one, and it may be weakened by other evidence."[34] After discussing reasons why the inference may not apply in certain circumstances, the Seventh Circuit noted:

> It is for these reasons that the same-actor inference is unlikely to be dispositive in very many cases. In fact, we have found no case in this or any other Circuit in which a plaintiff relying on circumstantial evidence to prove an improper motive was able to produce sufficient evidence to otherwise sustain his burden on summary judgment and yet was foreclosed from the possibility of relief by the same-actor inference. This is unsurprising given that the same-actor inference is not itself evidence of discrimination.[35]

Judge Xavier Rodriguez of the Western District of Texas observed that the same actor inference may mean less today, after *Reeves*, than it once did.[36] In *Moultrie*, Judge Rodriguez upheld the denial of summary judgment on a race discrimination claim despite the existence of the same actor inference.[37] The Court "agree[d] with the employer's argument that pre-

---

[33] *Russell v. McKinney Hospital Venture, at* 229 n. 16 (5th Cir. 2000), *quoting Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996); *see also Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996) (court declined to establish categorical rule that no inference of discrimination could arise under same actor circumstances).

[34] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573-74 (6th Cir. 2003), citing Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995).

[35] *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir. 1999), *citing Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996).

[36] See *Moultrie v. Laboratory Corp. of America*, 2004 WL 1173398, *3 (W.D. Tex. May 27, 2004).

[37] *Id.*

*Reeves* cases would mandate the granting of summary judgment" but succinctly stated, "[t]hat is, however, no longer the legal landscape."[38]

Finally, Defendants argue that no inference of age discrimination can be drawn here because the decision-maker, was in the same protected class as Squyres. Defendant's position ignores Supreme Court precedent holding that "[because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."[39] Indeed the Seventh Circuit persuasively stated:

> On reflection, we offer the counterdictum that the relative ages of the terminating and terminated employee are relatively unimportant. For it is altogether common and natural for older people, first, to exempt themselves from what they believe to be the characteristic decline of energy and ability with age; second, to want to surround themselves with younger people; third to want to protect their own jobs by making sure the workforce is not too old, which might, if 'ageist' prejudice is rampant, lead to RIFs of which they themselves might be the victims; and fourth, to be oblivious to the prejudices they hold, especially perhaps prejudices against the group to which they belong. We emphatically rejected the 'same-actor inference' in the race-discrimination setting in Johnson v. Zema Systems Corp., 170 F.3d 734, 745 (7th Cir. 1999), and our conclusion there applies with equal force to proof of age discrimination.[40]

Defendants' evidence is not enough to undermine Squyres' powerful pretext evidence of discrimination. The motion for summary judgment is not warranted.[41]

  (7) ***Summary judgment on issue of single integrated enterprise is not appropriate in the face of substantial factual disputes regarding the factors which would support a finding that the three entities are a single integrated enterprise***

There are substantial material fact issues relating to the interrelationship between Heico, Ancra and S-Line which preclude summary judgment as to Ancra and Heico. Although Squyres' employment contract names S-Line as his employer, Squyres has pointed to many instances

---

[38] *Id.*

[39] *Castaneda v. Partida*, 430 U.S. 482, 499-500 (1977); *see also Danzer v. Norden Systems, Inc.*,151 F.3d 50, 55 (2d Cir. 1998).

[40] *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001)

[41] *See Uranyi v. Multiplan, Inc.*, 2006 WL 1662616, at *9 (E.D.N.Y. June 12, 2006).

where his supervision, direction and labor relations and employment policies were dictated by Ancra and/or Heico.  In addition the record is replete with instances where Defendants' own documents support the fact that there are bases for finding single integrated enterprise.  The Fifth Circuit applies a four factor test for determining when "separate business entities are sufficiently interrelated" to assert a violation of Title VII rights against both. *Trevino v. Celanese Corp.,* 701 F.2d 397, 403 (5th Cir. 1983).  These four factors which would form the basis for a finding of single employer are generally considered as  (1) interrelation of operations, (2) centralize control of labor or employment decisions, (3) common management, and (4) common ownership or financial control".  *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir. 1997).

Here there is no question that there is centralized control of labor or employment decisions between Ancra and S-Line.  Mark Daughtery performed the human resource functions for both entities.  The organization charts show substantial overlap between the individuals who work for Ancra and those who work for S-Line.  Squyres was initially informed that he would be managed by Heico and subsequently was instructed to report to various management personnel at Ancra.  He was advised that his expenses were subject to review and approval by Heico and he was repeatedly provided with Ancra and Heico personnel policies and procedures.  Ancra management was subject to oversight, direction by Heico and even these high level personnel could not distinguish between Heico Companies and Heico Holdings.  In the very document which Frediani provided to Squyres as the required notification that the employment agreement would not be renewed, he signs it as CEO/President of Ancra and references Ancra as providing notice in accordance with "our agreement" and references "our agreement entered into with you." (Def. App. 119).  For these reasons, summary judgment on the issue of Ancra and Heico status as employers of Squyres is precluded as there are substantial material factual disputes.

24

**IV.  CONCLUSION**

For all the reasons set forth herein, Squyres respectfully requests the Court to deny the motion for summary judgment in all respects and allow him to proceed to trial.

Respectfully submitted,

/s/ Yona Rozen
Hal K. Gillespie, Attorney in Charge
State Bar No. 07925500
Yona Rozen
State Bar No. 17358500
GILLESPIE, ROZEN & WATSKY, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, TX 75204
Telephone:  214.720.2009
Fax:  214.720.2291

**ATTORNEYS FOR PLAINTIFF
JERRELL P. SQUYRES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via electronic delivery through the Court's ECF filing system on August 26, 2013.

By:  s /*Yona Rozen*
Yona Rozen