UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRELL P. SQUYRES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-2348-B |
| | § | |
| THE HEICO COMPANIES, LLC, | § | |
| S-LINE CORPORATION, LLC, and | § | |
| ANCRA INTERNATIONAL, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants the Heico Companies, LLC, S-Line Corporation, LLC, and

Ancra International, LLC's Motion for Summary Judgment (doc. 51), filed July 29, 2013. For the

reasons presented below, the Motion is **GRANTED** as to all claims.

## I.

## BACKGROUND

Plaintiff Jerrell P. Squyres brings this employment discrimination action against his former

employer after the employer refused to renew its employment agreement with Squyres and, instead,

offered the 70-year-old a different position at a different salary. Squyres asserts claims for violations

of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and for violations

of the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.001 *et seq.*

*A. Sale of JPS to S-Line*

Squyres is the former president and sole owner of JPS Corporation, which owned Lone Star

Parts Company. Doc. 53-1, Squyres Dep. 9-10. Lone Star manufactured fleet transportation

products, and sold its products under the brand "S-Line." *Id.* at 9. In 2007, Squyres began to negotiate the sale of JPS and its subsidiaries with Steve Frediani, the President and CEO of Ancra, and Nelson Fong, CFO of Ancra. Doc. 53-1, Squyres Dep. 29-30; Doc.53-2, Frediani Aff. ¶ 7. The parties reached an agreement in 2008, and Heico Holding created S-Line to purchase JPS's assets pursuant to an Asset Purchase Agreement. Doc.53-2, Frediani Aff. ¶ 9.

The Asset Purchase Agreement provided that Squyres would receive $5.15 million in total consideration for his interest in JPS and its subsidiaries. Doc. 53-2, Asset Purchase Agreement Ex. A § 1.4; Doc. 53-2, Employment Agreement Ex. B § 3(a); Doc. 52, Defs.' Br. 4. A large portion of this consideration came through S-Line's assumption of the $3.8 million of debt that JPS had previously incurred and that Squyres had personally guaranteed.  Doc. 53-2, Asset Purchase Agreement Ex. A § 1.4; Doc. 53-3, Debt Report Ex. A; Doc. 53-1, Squyres Dep. 139. Another $150,000 would come through the payment of a portion of the income taxes that would arise from the transaction. Doc. 53-2, Asset Purchase Agreement Ex. A § 1.4;  Doc. 52, Defs.' Br. 4. Pursuant to an Employment Agreement that was executed the same day as the Asset Purchase Agreement, the final $1.2 million of the consideration would be paid to Squyres in the form of a guaranteed three-year annual salary of $400,000. Doc. 53-2, Employment Agreement Ex. B § 3(a). Under the Employment Agreement, Squyres would become the Vice President of Sales and Marketing for S-Line for three years, with an automatic extension for another year unless one party gave timely notice to the other party of its intention not to extend the Agreement. Doc. 53-2, Employment Agreement Ex. B § 1. On October 22, 2008, the parties closed the transaction and Squyres became an employee of S-Line. *Id.*; Doc. 52, Defs.' Br. 4.

B. *Squyres' Employment at S-Line*

Squyres was 67 years old when he sold his company to S-Line and became its Vice President of Sales and Marketing. Doc. 52, Defs.' Br. 8. The quality of Squyres' performance as an employee of S-Line is a matter of some dispute. Squyres asserts that he added value to Defendants' business by training younger personnel and by using his high-level contacts in the industry to make substantial sales. Doc. 68, Pl.'s Resp. 7. Defendants allege that Squyres had trouble adjusting to a large national company after serving as the president and sole owner of his own business. Doc.53-2, Frediani Aff. ¶ 12-13. They also assert, and Squyres acknowledges, that he and Frediani often had disputes over business expenses. Doc. 52, Defs.' Br. 6; Doc. 53-1, Squyres Dep. 55-58, 63. Frediani questioned the propriety of some of these expenses and whether the tens of thousands of dollars that Squyres was spending were being directed towards worthwhile business events. Doc. 52, Defs.' Br. 6; Doc.53-2, Frediani Aff. ¶ 13.  Defendants also provide evidence that some employees questioned whether some of Squyres' expenses were truly business related. Doc. 53-5, Email Tom Leon to Paul Delaney 1-2.

Squyres alleges that during his time at S-Line he was treated differently from his younger coworkers. Doc. 68, Pl.'s Resp. 7. He insists that he was excluded from sales meetings and company functions, that he was ignored by upper management, that he was omitted from telephone lists of sales personnel and organizational charts, that he was referred to as the "old man," that he was "exiled" from the S-Line office and not consulted when S-Line sought new offices, and that he was subjected to stricter scrutiny than other employees with regards to business expenses. *Id.* at 7-8; Doc. 53-1, Squyres Dep. 40-49, 50-53.

A few months before the Employment Agreement was set to expire, Squyres remarked to an HR representative for Ancra that he would like to keep working until he was 90, health permitting. Doc. 53-1, Squyres Dep. 40-41; Doc. 66-9, Squyres Dec. ¶ 15. According to Frediani, however, based

on Squyres' performance, the high annual salary he received, and the friction caused by his claimed expenses, Frediani decided not to renew Squyres' Employment Agreement. Doc.53-2, Frediani Aff. ¶¶ 14-15. Instead, on September 22, 2011, Frediani presented Squyres with written notice that the company would not be renewing his Employment Agreement and a proposal for Squyres to continue working for the company as an Independent Sales Representative. Doc.53-2, Frediani Aff. ¶¶ 17-18, Doc. 53-2 Independent Sales Representative Proposal Ex. D. In this new position, Squyres would have received a reduced salary of $120,000 and would have been eligible for certain incentives and commissions, but he would only have been a contract employee with S-Line. Doc. 53-2 Independent Sales Representative Proposal Ex. D. Squyres was not given an option to continue as an at-will employee at S-Line with a reduced salary, although no other employee at Ancra or S-Line had or was otherwise required to have a written employment contract. Doc. 66-3, Frediani Dep. 142; Doc. 66-2, Fong Dep. 61-62.

Squyres did not immediately accept S-Line's new proposal, but instead tried to clarify some of its terms. Doc. 53-6, Squyres Email. Although the proposal stated a September 29 deadline for acceptance, Squyres continued to communicate with Defendants on September 30 about the proposal. *Id.* Finally, on September 30 at 7:11 p.m., Frediani retracted the proposal. Doc. 53-2, Frediani Email Ex. H.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are

- 4 -

material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Defendants move for summary judgment on Plaintiff's ADEA and TCHRA claims.[1] The Court will first set out the analytical framework that generally applies to both laws, and will then consider each parties' arguments in turn.

### A. The McDonnell-Douglas Burden-Shifting Framework

---

[1]While Squyres initially raised claims of breach of contract, he has expressly abandoned those claims in his Response Brief. Doc. 68, Pl.'s Resp 5.

For cases based on circumstantial evidence, Courts apply the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to claims under both the ADEA and the TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479 (Tex. 2001); *Daniel v. Universal ENSCO, Inc.*, No. 11-20654, 2013 WL 150110, at *3 (5th Cir. Jan. 15, 2013).  Under the *McDonnell-Douglas* approach, a plaintiff must first establish a *prima facie* case of discrimination.  *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). If the plaintiff meets his burden in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment decision. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). The defendant's burden, however, is only one of "production, not persuasion," and involves no credibility assessment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)(citing *St. Mary's*, 509 U.S. at 509). If the defendant is able to articulate such a reason, "the presumption raised by the *prima facie* case is rebutted" and drops from the case. *St. Mary's*, 509 U.S. at 507 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

The third step of the *McDonnell-Douglas* framework differs under the ADEA and the TCHRA. A plaintiff advancing ADEA claims must present sufficient evidence to raise a genuine issue of material fact as to whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext" for discrimination. *Reeves*, 530 U.S. at 143; *Peterson v. Bell Helicopter Textron, Inc.*, 901 F.Supp.2d 846, 854-55 (N.D. Tex. 2012). More specifically, pretext is shown through evidence of disparate treatment or through evidence that the employer's reasons are false. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Ultimately, a plaintiff has the burden of persuasion to establish that age was the but-for case of the employer's adverse decision. *Gross v.*

*FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009). Under the TCHRA, by contrast, once the defendant employer has provided a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must show that age was a "motivating factor" for the employment decision. Tex. Lab. Code Ann. § 21.125(a); *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 479, 44 Tex. 519 (Tex. 2001). This means that a plaintiff can meet its burden by showing either (1) that the reasons for an adverse employment action were not true, but were in fact a pretext for discrimination, or (2) that, even if the reasons for the adverse action were true, another motivating factor was age. *Kokes v. College*, 148 S.W.3d 384, 393 (Tex. App.–Beaumont 2004, no pet.).

   *B. The Parties' Claims*

   Each party disputes whether the other has met its burden under the *McDonnell-Douglas* framework.

   ### 1. Prima Facie Case

   First, Defendants dispute whether Squyres has met his initial burden of establishing a *prima facie* case of age discrimination. To make out a *prima facie* case of age discrimination, Squyres must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 632 (Tex. 2012).

   Defendants apparently do not dispute that Squyres was within a protected class at the time of his discharge and that he was qualified for his position, but they do maintain that Squyres cannot meet the first and fourth elements of a *prima facie* case. Specifically, Defendants argue that Squyres

cannot make out the first element of his *prima facie* case because he was not discharged–his contract simply was not renewed and expired based on its terms. Doc. 52, Defs.' Br. 20; Doc. 53-2, Employment Agreement Ex. B.  As to the fourth element, Defendants insist that Squyres has provided no evidence to establish either that he was replaced by someone outside of his protected class or that Frediani made his decision to terminate Squyres because of Squyres' age. Doc. 52, Defs.' Br. 20.

Squyres does not argue that he has presented direct evidence of discrimination, but he does maintain that he has provided evidence sufficient to establish a *prima facie* case. He insists that he can establish the first element of his *prima facie* case because the Defendants chose to terminate him and did not just elect to end his Employment Agreement. Doc. 68, Pl.'s Resp. 17. To support this argument, Squyres provides deposition testimony from Daugherty and Frediani admitting that having an employment contract was not a requirement to work for Defendants. Doc. 66-3, Frediani Dep. 141-142; Doc. 66-5, Daugherty Dep. 11-12. He also points to the admissions of Nelson S. Fong, Ancra's Chief Financial Officer, that all other S-Line and Ancra employees were at-will employees. Doc. 66-2, Fong Dep. 61-62. Squyres also relies on the language of the Employment Agreement, noting that it contemplates renewal and that it does not say that when the Agreement expired, he would be terminated. Doc. 68, Pl.'s Resp 20; Doc. 53-2, Employment Agreement Ex. B.  Squyres posits that because he was not given a similar option to continue as an at-will employee he was effectively terminated when Defendants chose to end his employment after his Employment Agreement expired.

To meet the final element of his *prima facie* case, Squyres submits evidence to show that he was replaced after his employment ended. He points to a press release that was issued after his

- 8 -

termination to announce that Jim Calico had been appointed as the new Vice President of Sales and Marketing for S-Line, Doc. 66-3, Press Release, and to deposition testimony and answers to interrogatories stating that his accounts were assigned to a substantially younger individual. Doc. 66-5, Daugherty Dep. 31-32; Doc. 66-7, Answer to Interrogatory 4.

Squyres has presented sufficient evidence to meet the first element of his *prima facie* case–that he was terminated. Defendants' assertion that the decision to allow Squyres' Employment Agreement to expire does not equate to a "termination" is not convincing. The effect of Defendants' decision was to materially alter Squyres' employment status as well as his pay and job responsibilities–certainly enough to constitute an adverse employment action. The ADEA applies to adverse employment decisions, not just wrongful terminations, and even assuming *arguendo* that the  circumstances here do not qualify as termination, then they would likely constitute a demotion. *Burger v. Central Apartment Management Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (noting that employment discrimination statutes are geared towards addressing ultimate employment decisions, which include hiring, discharging, promoting, compensating, and granting leave). As Defendants themselves admit, Frediani's decision did not just allow the Agreement to expire, but it also necessarily included the decisions to remove Squyres from his position as Vice President of Sales and Marketing and to offer him a different position as an independent contractor, an act similar to a demotion. Doc. 52, Defs.' Br. 6-7; Doc. 74, Defs.' Reply 3-4. Moreover, even if the decision not to renew Squyres' Agreement does not amount to termination, Squyres does not challenge the failure to renew his Agreement, but the decision to terminate his employment once the Agreement ran out. Doc. 68, Pl.'s Resp. 18. Having considered all of these factors, the Court concludes that Squyres has produced enough evidence to establish the first element of his *prima facie* case.

It is less certain whether Squyres has met his burden as to the final element of his *prima facie* case. Normally, merely showing that a party was replaced without a showing that his replacement was younger is insufficient to support a *prima facie* case. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). A plaintiff must show that his replacement is substantially younger in order establish a prima facie case of age discrimination. *Id.* While Squyres' evidence shows that his replacement was over 40–and therefore within his protected class– it *also* shows that his accounts were taken over by Jeff Murillo, who is much younger than Squyres. Doc. 66-3, Press Release; Doc. 66-5, Daugherty Dep. 31-32; Doc. 66-7, Answer to Interrogatory 4. Thus, in addition to raising questions of whether his purported replacement could be considered "substantially younger," *Rachid v. Jack In The Box*, 376 F.3d 305, 313 (5th Cir. 2004) (noting, without deciding, that an age difference of five years presents a close question of whether a replacement is "substantially younger"), the evidence also creates a close issue as to whether Squyres was actually "replaced" for purposes of the ADEA, or whether his responsibilities were instead merely "reassigned." *Dulin v. Dover Elevator Co.*, 139 F.3d 898, at *2-*3 (5th Cir. 1998) (finding no age discrimination when an employee was terminated and his duties were reassigned to two existing employees); *Ellini v. Ameriprise Financial, Inc.*, 881 F.Supp.2d 813, 820 (S.D. Tex. 2012) ("When a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee.") (citations omitted); *but see Howard v. United Parcel Service, Inc.*, 447 Fed. App'x 626, 629 n.2 (5th Cir. 2011) (finding that an employee was able to establish a prima facie case of discrimination by showing that his position was eliminated and his duties were assigned to someone outside his protected class). Because the Court decides this case on pretext grounds, however, it will

assume without deciding that Squyres has presented sufficient evidence to meet this final element and that he has therefore made out a *prima facie* case of age discrimination.

### 2. Legitimate, Nondiscriminatory Reasons

Defendants argue that, even if Squyres can make out a *prima facie* case of age discrimination, they had legitimate, nondiscriminatory reasons for terminating him. The Defendants first note that Frediani did not just choose to *terminate* Squyres. Rather, he decided *not to renew* Squyres' Employment Agreement and to instead offer him a position more consistent with the value he added to the company. Doc. 74, Defs.' Reply 4. Only after Squyres failed to accept the new position by the appropriate deadline did Frediani make the decision that ended Squyres' employment. *Id.* As to the reasons for Frediani's decisions, Defendants provide an affidavit from Frediani which states that Frediani was unhappy with Squyres' lack of success as a salesperson, his conduct with regard to business expenses, his resistance to reporting to others, and the excessive amount of time he spent at unproductive social events. Doc.53-2, Frediani Aff. ¶ 15. Defendants also argue that Frediani wanted to allow the Agreement to expire in order to reduce costs. Doc. 52, Defs.' Br. 21. Defendants also provide emails from other employees that manifest concerns about Squyres' use of his expense account and his ability to work within the corporate structure of S-Line. *Id.* at 22.

Squyres contests the legitimacy of Defendants' proffered reasons on two grounds. First, he argues that Defendants are foreclosed from arguing that they had legitimate, nondiscriminatory reasons for ending his employment because they argue in the first place that they did not "terminate" him. Doc. 68, Pl.'s Resp. 19. Squyres' argument overlooks that Defendants are permitted to present alternative grounds for granting sought-after relief, however. *See Willis v. Sweetheart Cup*, No. 3:00-cv-1617-BC, 2002 WL 67532, at *4-*5 (N.D. Tex. Jan. 11, 2002) (granting summary judgment

when a defendant argued that plaintiff had not suffered an adverse employment action and, in the alternative, that the defendant had a legitimate, nondiscriminatory reason for its actions); *Holmes v. DEA*, 512 F.Supp.2d 826, 848-49 (N.D. Tex. 2007) (entertaining claims by defendant that plaintiff had not suffered an adverse employment action and that, even if plaintiff had, she could not show that defendants' legitimate reasons were pretextual); *Hernandez v. Napolitano*, No. EP-10-cv-480-KC, 2012 WL 641033, at *8 (N.D. Tex. Feb. 27, 2012) (same); *Gonzalez v. Southwestern Bell Yellow Pages Inc.*, No. 3:05-cv-383-L, 2007 WL 900768, at *6 (N.D. Tex. Mar. 26, 2007) (granting summary judgment when a defendant argued that plaintiff failed to make out a prima facie case of age and sex discrimination and, in the alternative, that she failed to show that defendants' legitimate, nondiscriminatory reasons for terminating her were pretext). Defendants may therefore argue, first, that the nonrenewal of Squyres' Agreement and the offering of a new position do not constitute "termination" for the purposes of the ADEA, and, alternatively, that even if these actions do constitute "termination," they had legitimate, nondiscriminatory reasons for undertaking them. These two arguments are not so materially contradictory that they cannot coexist in the same brief, and by presenting one of these arguments a party does not necessarily foreclose his opportunity to present the other.

Squyres' second ground for contesting Defendants' proffered reasons for his termination is that the reasons that Frediani offers in his affidavit for terminating Squyres do not align with the reasons that he and other employees offered in deposition testimony. Doc.53-2, Frediani Aff. ¶ 15; Doc. 66-3, Frediani Dep. 164-65; Doc. 66-4, Leone Dep. 126; Doc. 66-5, Daugherty Dep. 28-29.

This argument is more directed towards establishing that the reasons provided by Defendants are pretextual, however, and will accordingly be addressed below.

Frediani states in his affidavit that he decided not to renew Squyres' Employment Agreement because (1) Squyres' expense account use was excessive and violative of company policy, (2) Squyres resisted reporting his hours and activities, (3) Frediani wanted to reduce costs by reducing Squyres' salary, and (4) Squyres had not provided the expected value to the company. Doc. 53-2, Frediani Aff. ¶ 15. Although these reasons are stated very generally, they are supported by emails from other employees and deposition testimony that show that Frediani and Squyres did dispute over his use of expense accounts and that other employees were frustrated with Squyres' adjustment to S-Line's corporate structure. Doc. 53-5, Leone Email to Delaney; Doc. 52-1, Squyres Dep. 55-56, 63. Defendants also point to Squyres' Employment Agreement, noting that it was made for a limited time and asserting that Frediani made the decision not to renew it in order to reduce costs. Doc. 53-2, Employment Agreement Ex. B § 1;  Doc.53-2, Frediani Aff. ¶¶ 14-16. Finally, Defendants show that Squyres was accustomed to expensing high-price items, that his Employment Agreement only allowed for "reasonable business expenses . . . in accordance with the policies of the Company," and that Frediani felt that some of Squyres' expenses violated these policies. Doc.53-2, Frediani Aff. ¶ 13; Doc. 53-2, Employment Agreement Ex. B § 3(d); Doc. 52-1, Squyres Dep. 139-40. Having considered all of the summary judgment evidence before it, the Court concludes that the Defendants have presented sufficient evidence to meet their burden of articulating legitimate and nondiscriminatory reasons for Frediani's decisions as to Squyres' employment.

3. Pretext

The burden now shifts to Squyres to present evidence sufficient to raise a genuine issue of material fact as to whether Defendants' reasons for their employment decisions were pretext for discrimination. A plaintiff may show an employer's proffered reason to be pretext either by directly showing that a discriminatory reason motivated the adverse employment decision or by indirectly showing the employer's reason to be unworthy of credence. *Hall v. Gilman, Inc.*, 81 F.3d 35, 37 (5th Cir. 1996); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citing *St. Mary's*, 509 U.S. at 507-08). Under the TCHRA, a plaintiff can also establish pretext by showing that, even if the reasons for the adverse action were true, another motivating factor was age. *Kokes*, 148 S.W.3d at 393.

Squyres counters that the fact that Defendants' reasons for his termination are shifting and inconsistent is evidence of pretext. Doc. 68, Pl.'s Resp. 19. He also presents evidence that all of the other employees at Ancra and S-Line are at-will employees, Doc. 66-3, Frediani Dep. 141-142, Doc. 66-5, Daugherty Dep. 11-12, Doc. 66-2, Fong Dep. 61-62, and posits that Defendants' explanation that Squyres' employment had to end when his Agreement expired therefore makes no sense. Doc. 68, Pl.'s Resp. 20. To further bolster this point, Squyres points to the language in the Employment Agreement that envisions renewal of the Agreement. Doc. 53-2, Employment Agreement Ex. B § 1. He also notes that the Agreement does not say that his employment would end once the Agreement expired. *Id.* Squyres also argues that evidence showing that Defendants did not give him reasons for his termination and that there was close temporal proximity between his statement that he wanted to work until he was 90 and his termination indicate pretext.  Doc. 68, Pl.'s Resp. 21. Finally, Squyres maintains that Frediani's reasons for terminating him are false. To support this argument,

he presents a declaration that directly contests Frediani's reasons for failing to renew his contract and alleges (1) that most disputes he had with management came about because he could not get responses to inquiries from them, (2) that most of the social events he attended led to sales and opportunities for Defendants, and (3) that most of the social events occurred on weekends. He also points out that most of the evidence that Frediani cites to are discussions that did not involve Squyres and that most of the events that gave rise to the complaints against him occurred long before the end of his employment. Doc. 68, Pl.'s Resp. 21.

Defendants argue that only inconsistent, as opposed to just shifting, reasons can be evidence of pretext, and that they have provided a consistent explanation for their employment decisions throughout this case. Def.'s Reply 6-7. Defendants also point out that while no other employee may have had an Employment Agreement like Squyres, he was in a unique position because the Employment Agreement was part of the acquisition of his former business. Doc. 74, Defs.' Reply 7. Defendants therefore insist that their explanation for Squyres' eventual termination is reasonable because his Agreement ended according to its terms and, though they tried to negotiate a new deal with Squyres, they were unable to reach an agreement. *Id.* at 7. Defendants also claim that Frediani provided Squyres with a reason for his termination when he sent an email to retract the Independent Sales Representative offer that stated the company "is unable to provide you with an employment agreement that meets your needs." Doc. 53-2, Email Ex. H. Finally, Defendants allege that Squyres only challenges the correctness of Frediani's reasons for terminating him and does not present evidence that they are false. Doc. 74, Defs.' Reply 9.

Contrary to what Squyres argues, the reasons that Defendants offer for their employment decisions are not inconsistent or shifting as the reasons offered by the defendant employers in *Burrell v. Pepper*, 482 F.3d 408, 415 (5th Cir. 2007) and *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002). In *Burrell*, the defendant offered conflicting rationales for its decision not to promote an employee, alleging to the EEOC that it made the decision due to the employee's insufficient "purchasing experience" and later stating to the district court that the decision was made because of the employee's insufficient "bottling experience." *Burrell*, 482 F.3d at 415. In *Gee*, an employer offered an inconsistent account of how a decision not to appoint an employee to a position was reached. 289 F.3d at 347-48. He stated that he had not participated in a meeting relating to the position, and then later admitted that he had in fact attended such a meeting. *Id.* He initially stated that he was unable to recall the substance of comments about the employee during the meeting, but then later testified that everyone made comments during the meeting and that they were generally negative. *Id.* He also stated that others were not involved in the selection process and then later admitted that he had consulted with several other individuals. *Id.* His account also conflicted with that of other employees. *Id.*

Squyres does not present evidence to show that Defendants have made one assertion only to later make a contradictory assertion, as the parties did in *Gee* and *Burrell*. Rather, Squyres' argument that Defendants' reasons for his termination are shifting and inconsistent repeats the argument that he presented to oppose Defendants' legitimate, nondiscriminatory reasons. Specifically, he maintains that Defendants' insistence that their decisions did not amount to termination under the ADEA prevents them from presenting any other reason to justify their

- 16 -

employment decisions. Doc. 68, Pl.'s Resp. 19. As explained above, however, Defendants' argument that their decisions did not amount to "termination" does not foreclose their argument in the alternative that they had legitimate, nondiscriminatory reasons for acting as they did with regards to Squyres. *See, e.g., Willis*, 2002 WL 67532, at *4-*5; *Holmes*, 512 F.Supp.2d at 848-49. These arguments are not shifting or inconsistent, but are instead complementary and commonplace arguments raised in defense to claims of age discrimination. Moreover, Defendants' explanation for the decisions that ultimately led to the end of Squyres' employment have remained consistent throughout the case: based on a number of legitimate reasons, Frediani chose not to renew Squyres' Agreement and to instead offer him a different position, which Squyres failed to accept in a timely manner. Doc. 52, Defs.' Br. 20-22.

While Squyres alleges that the reasons Frediani offers in his affidavit for terminating Squyres do not align with the reasons that he and other employees offered in deposition testimony, a close inspection of the statements reveals that they do not conflict to any great degree. Doc.53-2, Frediani Aff. ¶ 15; Doc. 66-3, Frediani Dep. 164-65; Doc. 66-4, Leone Dep. 126; Doc. 66-5, Daugherty Dep. 28-29. Except for Frediani's testimony, the other deposed employees merely offer a refrain of Defendants' consistent argument throughout this case that Squyres was not terminated. As such, they do not conflict with Frediani's reasons as contained in his affidavit.

Frediani's statements in his deposition do conflict slightly with his affidavit, but not enough to raise a question as to mendacity or fabrication. This is because when Frediani stated in his deposition "[i]f we were disappointed at something [Squyres] was doing, I certainly wouldn't have made the effort [to craft an offer for a new position]," he was responding to a question of whether

he had any reasons to fire Squyres apart from the termination of his Employment Agreement. Doc. 66-3, Frediani Dep. 165. This statement does not necessarily indicate that Frediani was in every respect pleased with Squyres' performance, however, and it is therefore not necessarily contradictory when Frediani states in his affidavit that he personally had misgiving about Squyres' performance. Doc.53-2, Frediani Aff. ¶ 15. Thus, while Squyres suggests that these statements indicate that Frediani was not disappointed with his performance and that Frediani only later fabricated reasons in his affidavit, a review of the statements reveals that they are more appropriately taken as indicating that Frediani did not have reasons that drove him to affirmatively terminate Squyres, even though he did have reasons to end Squyres' Employment Agreement and offer him a new position. The statements are not so inconsistent as to raise a question of fact as to whether the reasons Frediani has offered are worthy of credence.

Similarly, the temporal proximity between Squyres' statement to Daugherty and Frediani's decision to terminate him is immaterial because Defendants have presented undisputed evidence that Daugherty did not convey the message to Frediani, who made the ultimate decision as to Squyres' employment. Doc. 74, Defs.' Reply 8. Just as a stray remark by a coworker or decision-maker is generally insufficient to establish age discrimination, *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993), a stray remark by a plaintiff is likely insufficient to raise a genuine dispute of fact as to pretext. A similar logic applies to Squyres' evidence that his coworkers called him "old guy." Doc. 52-1, Squyres Dep. 115-17. The content and context of these statements do not indicate bias or animus, and, as Squyres himself admits, they were made sporadically by individuals he considered to be friends and in a joking manner at a time far removed from the decisions that led to his ultimate

- 18 -

termination. *Cf. Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (looking at the content and context of statements to determine whether statements constituted circumstantial evidence of discriminatory animus). Squyres also admits in deposition testimony that no one ever made any other statement to him about his age. Doc. 52-1, Squyres Dep. 47-48.

Squyres' argument that because all other employees at S-Line and Ancra were at-will his employment should not have ended when his Employment Agreement expired does not take into account that he was in a different situation from most employees. Squyres was hired as an employee and was paid a higher salary than other employees in consideration for S-Line's acquisition of his companies. Contrary to what Squyres suggests, the Employment Agreement did not require renewal, but it did allow Defendants to end the Agreement after three years with proper notice. Doc. 53-2, Employment Agreement Ex. B § 1. It also did not provide for his continued employment beyond the initial three-year term; it instead only provided for a limited time frame and salary sufficient to compensate him for the sale of his businesses. *Id.* § 1, 3. Thus, according to the terms of the Employment Agreement, Defendants were not obligated to maintain Squyres as an employee and he had no right to continue in his former position as an at-will employee.[2]

---

[2]Notably, Defendants did offer Squyres a new position, but unlike all other S-Line and Ancra employees, it was as a contract employee. D. App. 120. While Squyres does not argue this point, the Court acknowledges that there is some significance to the fact that Defendant offered Squyres a position and employment status that differed from any other S-Line employee. This fact is insufficient to raise a question of fact as to pretext, however, because it does not indicate age bias on Defendants' part or that the reasons Frediani offered for his decisions are unworthy of credence. Indeed, the reasons that Frediani offers for his decision not to renew Squyres' Agreement apply equally to his decision to offer Squyres a position that nobody else in the corporate structure possessed, and Squyres has not presented evidence to find that these reasons are false or that Frediani was acting in bad faith.

Defendants did provide Squyres the reasons for their ultimate decision to terminate his employment when Frediani stated in an email to Squyres that he was rescinding the offer of the Independent Sales Representative position due to Squyres' failure to respond in a timely manner. Doc. 53-2, Frediani Email Ex. H. To the extent that Squyres intends to argue that Defendants should have, but failed, to give him the reasons for their decision not to renew his Employment Agreement and to offer him a different position, he provides no evidence that he ever asked for these reasons. Moreover, there is little case law to suggest that the failure to voluntarily state the reasons for terminating an employee or taking an adverse employment action should raise an inference of pretext. *Becerra v. Ms. Ellie's Kitchen*, No. 11-1833, 2012 WL 5363793, at *6 (E.D. La. Oct. 31, 2012); *but see Vulcan Basement Waterproofing of Illinois, Inc., v. N.L.R.B.*, 219 F.3d 677, 688 (7th Cir. 2000) ("An employer is not required to give reasons when it fires its employees (although under some circumstances failing to do so *might* give rise to an inference of . . . animus).")). The failure, under these circumstances, to give reasons for the nonrenewal of Squyres' Employment Agreement, in light of the subsequent offer of new employment with its attached deadline and Squyres' awareness of the deadline in his Employment Agreement, does not show any animus towards Squyres based on his age and does not suggest that the proffered reasons for Frediani's decisions were pretext.

Squyres attempts to show that the reasons that Frediani offers for his employment decisions are false by presenting his own declaration in which he contests these reasons directly. Doc. 66-9, Squyres Dec. ¶ 15. He maintains that he created many sales opportunities for Defendants and that he had problems with management because they frequently did not respond or give him feedback.

*Id.* He also alleges that many of the social events that Frediani complained of occurred on weekends, not work days, and that they directly resulted in substantial sales for the company. *Id.*

Even construing all factual disputes in Squyres' favor, the Court cannot conclude that Squyres raises a factual issue as to whether Frediani's reasons are pretextual. Squyres does not contest that his expenses were much greater than other employees, merely that they resulted in sales. Doc. 53-2, Frediani Aff. ¶ 13. Moreover, Frediani states that he made his decisions because S-Line did not receive the benefits it expected from his employment, and Squyres' testimony that he produced significant sales does not fully rebut this or indicate that he had met his employer's expectations. Doc. 53-2, Frediani Aff. ¶ 15. Squyres also does not contest that Frediani made the decision not to renew his Agreement in order to reduce costs. Any one of these reasons is a legitimate grounds for Defendants to act as they did, and Squyres' evidence, rather than indicating that these reasons are false or that Frediani acted in bad faith, instead only asserts that they are incorrect. The Court is not empowered to second guess an employer's employment decisions. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988). Although showing that an employer's stated reasons for an adverse action are incorrect can sometimes bear on the question of whether the reasons are pretextual, Squyres has failed to directly rebut or provide specific evidence showing that Frediani's reasons for ending his employment were incorrect, let alone untrue. *See Bienkowski*, 851 F.2d at 1507 (holding that plaintiff's affidavits raised questions as to an employer's motivation when the affidavits recital of events both differed diametrically and very specifically with the employer's recital). The issue is not whether the allegations are true or false, but whether an employer acted in good faith. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). Squyres may disagree with

Frediani's assessment of his performance, but merely rebutting the reasons with unspecific and inconclusive statements does not raise a question as to whether the stated reasons are true or whether Frediani acted in good faith.

Finally, Squyres presents evidence in the form of deposition testimony to show that he was not invited to sales meetings that younger employees were invited to, that he was ignored by upper management, that he was omitted from telephone lists of sales personnel and corporate organization charts, that he was "exiled" from the S-Line office and not consulted when S-Line sought new offices, and that he was subjected to stricter scrutiny than other employees with regards to business expenses. Doc. 68, Pl.'s Resp. 7-8. In all of this, Squyres cannot point to any specific facts that indicate that his treatment was due to his age, and he admits numerous times in his deposition that he merely felt or assumed that this treatment was because Defendants intended to "put him out to pasture." Doc. 53-1, Squyres Dep. 68, 86. Defendants do not generally contest that these events occurred, but argue that Squyres would not have been included in the meetings or on the organizational charts because he was an employee of S-Line, and the meetings and charts were for Ancra. Doc. 74, Defs.' Reply 2.

Even taking this evidence in a light most favorable to Squyres, it is not sufficient to raise a genuine dispute of material fact as to pretext. As Squyres himself asserts, he was the oldest of S-Line's salespeople, and thus any treatment that he received could be construed as age-related. Pl.'s Resp. 7. Different treatment is not necessarily discriminatory treatment, however, and no jury could infer animus from Squyres' mere speculation alone that he was treated differently because of his age. "A subjective belief of discrimination, however genuine, may not be the basis of judicial relief." *Lawrence*

*v. University of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999). Moreover, to the extent that Squyres is attempting to make out a claim of disparate treatment, he provides no evidence to show that he was similarly situated to the younger employees who were included on the phone lists or invited to the meetings when he was not. *Little v. Republic Refining Co.*, 924 F.2d 93, 96-97 (5th Cir. 1991) (rejecting evidence of different treatment as insufficient to show pretext because it failed to show that younger employees experienced preferential treatment under "nearly identical circumstances"). Rather, the record shows that many of the younger employees at S-Line were part of the same protected class as Squyres. Doc. 66-7, Answer to Interrogatory 4. Furthermore, Squyres provides no context to these allegations of disparate treatment and gives no indication whether such incidents happened frequently or were part of a history or pattern of discriminatory treatment at S-Line or Ancra. In contrast to Squyres' bare statements of belief that his treatment was due to his age, Defendants have submitted additional evidence that gives rise to an inference that Squyres was treated differently because of his use of expense accounts and performance as an employee. Doc. 52, Defs.' Br. 6; Doc.53-2, Frediani Aff. ¶ 13; Doc. 53-5, Email Tom Leon to Paul Delaney 1-2. Without any further evidence to support an inference of bias, the Court cannot conclude from Squyres' spare and uncertain statements of different treatment alone that he has raised a genuine fact dispute as to whether Defendants acted with discriminatory animus under these circumstances or that the reasons for their actions are pretext.

Adding further weight to the Court's conclusion that summary judgment is appropriate in this case is that the same-actor inference likely applies. The same actor inference arises when the individual who allegedly discriminated against a plaintiff was also the person who hired the plaintiff, giving rise to an inference that discrimination was not the reason behind the plaintiff's termination.

*Russell*, 235 F.3d at 228 n.16.  Here, Squyres does not dispute that Frediani made the decisions both

to hire him and to end his employment, and Defendants have submitted evidence which indicates

that as President of S-Line and Ancra, Frediani made both the hiring and firing decisions with

regards to Squyres. Doc.53-2, Frediani Aff. ¶¶ 14-16;  Doc. 52-1, Squyres Dep. 28, 30, 42-44.

Squyres does not contest that the inference would apply under these circumstances, but instead

maintains that the Court should refrain from applying it because he otherwise submits sufficient

evidence to raise a genuine dispute as to pretext. *Russell*, 235 F.3d at 228 n.16 ("we also note that

the 'same actor' inference does not rule out the possibility that an individual could prove a case of

discrimination"); *Haun v. Ideal Industries Inc.*, 81 F.3d 541, 546 (5th Cir. 1996) (declining to adopt

a rule that would preclude an inference of discrimination when the same-actor inference applies).

As the discussion above shows, however, Squyres has not produced a genuine issue of fact as to age

discrimination or pretext, and so the inference does apply, even though it is not the determinative

factor in this case.[3]

Plaintiff has not submitted sufficient evidence to raise a genuine issue of material fact as to

whether discriminatory motives drove the decision to terminate him or whether the reasons offered

by Defendants were unworthy of credence. *Hall*, 81 F.3d at 37. He has similarly not submitted

sufficient evidence to raise a genuine issue of fact as to whether age was a motivating factor in

addition to the reasons articulated by Defendants. *Kokes*, 148 S.W.3d at 393.  Based on the summary

judgment evidence before it, the Court concludes that no reasonable jury could find that age was the

---

[3]Because the Court grants summary judgment on all of Plaintiff's claims, it does not reach the question of whether The Heico Companies, LLC, Ancra International, LLC, and S-Line Corporation, LLC, are a single, integrated enterprise.

but-for cause, or even a motivating factor, in Defendants' decision to end Squyres' employment. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Squyres' TCHRA and ADEA claims.

## IV.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (doc. 51) is **GRANTED** as to all claims.

     **SO ORDERED**.

     **SIGNED: November 13, 2013.**

                                            _____

                                            JANE J. BOYLE
                                            UNITED STATES DISTRICT JUDGE